UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FCI USA, INC., ET AL., | No. C-03-4519 JCS |
| Plaintiff(s), | **ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTS I AND II OF DEFENDANTS' COUNTERCLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION TO THE EXTENT THEY RELATE TO U.S. PATENT NUMBERS 6,024,584, 6,079,991, 6,093,035, 6,164,983, AND 6,325,644 [Docket No. 118]** |
| v. | |
| HON HAI PRECISION INDUSTRY, ET AL., | |
| Defendant(s). | |

## I.   INTRODUCTION

On Friday, April 22, 2005, FCI's Motion to Dismiss Counts I and II of Defendants' Counterclaims for Lack of Subject Matter Jurisdiction to the Extent They Relate to U.S. Patent Numbers 6,024,584, 6,079,991, 6,093,035, 6,164,983, and 6,325,644 (the "Motion"), came on for hearing.  For the reasons stated below, the Motion is GRANTED.

## II.   BACKGROUND

On March 23, 2001, FCI sued Foxconn Electronics, Inc. and Hon Hai Precision Industry Co., Ltd. (hereinafter, collectively referred to as "Foxconn") for infringement of five patents by Foxconn's one-piece Level-2 Sockets in Case No. C01-1192 JCS ("FCI 1").[1]  On March 19, 2004, the parties to FCI 1 entered into a settlement agreement.  *See* Morazavi Decl., Ex. F (Settlement Agreement (attached to Joint Stipulation of Dismissal)).  Under the Settlement Agreement, FCI granted Foxconn a license for one-piece

---

[1] The patents alleged to be infringed are United States Patent Nos. 6,024,584, 6,079,991, 6,093,035, 6,164,983, and 6,325,644 (hereinafter, "the FCI 1 patents").

Level 2 Sockets manufactured by Foxconn in exchange for a lump sum payment and on-going royalties. *Id.* The Settlement Agreement also contained the following provision concerning challenges to the validity of the FCI 1 patents:

> 2.2   Hon Hai[2] agrees that it will not object to, challenge or contest, directly or indirectly, FCI's ownership of the FCI patents. In any dispute arising out of the License Product provided in the License Agreement the FCI Patents shall conclusively be presumed to be valid and enforceable and Hon Hai shall not directly or indirectly challenge the validity or enforceability of the FCI Patents in any proceeding involving the resolution of any such dispute. Hon Hai expressly reserves the right to object to, challenge or contest, directly or indirectly, the validity or enforceability of the FCI Patents or oppose directly or indirectly any patent or patent application related to the FCI Patents, except for disputes arising out of the Licensed Product provided in the License Agreement.

*Id.*, Settlement Agreement, Section 2.2. The License Agreement also contains a provision regarding challenges to the validity of the FCI 1 patents:

> 8.3   FCI shall have the right to terminate this agreement if Hon Hai takes any action directly or indirectly to oppose or invalidate any of the Licensed Patents or any related patent. However, FCI shall have no right of termination under this paragraph with respect to invalidity challenges made by Hon Hai in Civil Action C 03-4519 JCS pending in the U.S. District Court for the Northern District of California against the Licensed Patents and/or other FCI patents on which that suit is based and Hon Hai shall retain all its rights to challenge the validity of such patents in said Civil Action C 03-4519 JCS.

*Id.*, License Agreement, Section 8.3.

FCI filed this action on October 6, 2003, alleging that Foxconn was infringing seven patents owned by FCI – the five FCI 1 patents plus two additional patents – "through its activities involving low-profile two piece ball grid array ("BGA") connectors."[3] Complaint at 2, 4. Foxconn, in turn, asserted counterclaims seeking a declaratory judgment that: 1) "[n]either the Foxray line of products nor any other product made, used or sold" by Foxconn infringes any of the asserted the patents (Count I); and 2) the asserted patents are invalid (Count II).

On March 16, 2005, FCI informed Foxconn that it had decided to withdraw with prejudice its

---

[2] "Hon Hai" in the License Agreement refers collectively to Foxconn and Hon Hai.

[3] The two additional patents alleged to be infringed in this action are United States Patent Nos. 6,042,389 and 6, 241,535.

2

claims of infringement as to the FCI 1 patents with respect to the Foxray connector only. Declaration of Sheila Mortazavi in Support of FCI's Motion to Dismiss ("Mortazavi Decl."), Ex. A (March 16, 2005 Letter). The letter further promised to release Foxconn from all damages resulting from past infringement of these patents by the Foxray connector. *Id.* The Foxray connector was identified in Foxconn's discovery responses as the only 2-piece BGA connector "manufactured, used, offered for sale, sold or imported" by Foxconn. Mortazavi Decl., Ex. D (Foxconn Electronics, Inc.'s Supplemental Responses to Plaintiffs' First Set of Interrogatories at 2).

FCI now brings a Motion to Dismiss, asserting that because it has withdrawn its claims based on the FCI 1 patents and has promised to release Foxconn from all damages for past infringement, there is no actual controversy with respect to Foxconn's counterclaims of non-infringement and invalidity of the FCI 1 patents (Counts I and II) and therefore, these counterclaims must also be dismissed for lack of subject matter jurisdiction. According to FCI, in light of the withdrawal of its claims and the covenant not to sue, there is no threat that creates a reasonable apprehension on the part of Foxconn that it will face an infringement suit by FCI based on the FCI 1 patents and moreover, there is no present activity on the part of Foxconn which could constitute infringement of those patents.

In its Opposition, Foxconn argues that this Court has subject matter jurisdiction over its counterclaims because the Settlement Agreement in FCI 1 was "piecemeal," resolving only the infringement issues, while reserving Foxconn's validity and enforceability challenges. Opposition at 5-7. According to Foxconn, the Settlement Agreement envisioned that the validity issues that were not addressed in FCI 1 would be carried over to FCI 2. *Id.* at 6-7. Further, Foxconn asserts that it fears suit with respect to "a number of Foxconn's connector products," including its BGA DDR DIMM connector ("the DDR Connector"), which it has been selling to Apple since September 2003, and "an enhanced version of the Foxray Connector called Foxray-S Enhanced Receptacle," with respect to which Foxconn says it has taken "substantial steps toward developing." *Id.* at 8; *see also id.* at 16-17 (stating that "Foxconn is also actually manufacturing and selling more than a thousand connector products, which could be subject to a

claim by FCI under the Patents at Issue").[4]  According to Foxconn, the covenant and release offered by FCI is insufficient to protect it from suit because it only covers the Foxray Connector.

In its Reply, FCI contests Foxconn's characterization of the Settlement Agreement as "piecemeal," arguing that the Court's dismissal order makes clear that the settlement was not piecemeal.  That order states that the "parties have entered into a Settlement Agreement resolving their dispute" and that the Court is "dismissing with prejudice this action in its entirety."  Mortazavi Decl., Ex. F.  With respect to Foxconn's assertion that there is jurisdiction because the parties reserved the validity challenges, FCI notes that parties cannot stipulate to the existence of subject matter jurisdiction where there would, otherwise, be none.  FCI goes on to dispute Foxconn's assertions that there is an actual controversy, addressing separately the sockets that were licensed under the Settlement Agreement, the Foxray Connector, the Enhanced Foxray-S connector and the DDR Connector.

## III.  ANALYSIS

### A.  Legal Standard

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  A declaratory judgment claim may only be brought to resolve an "actual controversy." *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).  In order to demonstrate an actual controversy, a plaintiff must meet a two-part test:

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Intellectual Prop. Dev., Inc. v. TCI Cablevision*, 248 F.3d 1333, 1340 (quoting *Super Sack Mfg.*

---

[4] Foxconn notes that it did not name the Foxray-S Enhanced Receptacle in response to FCI's interrogatory because the interrogatory asked Foxconn to identify 2-piece BGA connectors that were "manufactured, used, offered for sale, sold or imported" by Foxconn and the Foxray-S Enhanced Receptacles have not yet reached the point in the development process that they are being manufactured or sold.  *Id.*, n. 5.

*Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995)). "Where . . . a declaratory judgment plaintiff attempts to ground jurisdiction on activities involving distinct, technologically different products, the court must carefully calibrate its analysis to each of the products." *Sierra Applied Sciences v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1374 (Fed. Cir. 2004).

The test for determining whether there is a reasonable apprehension is objective and requires an examination of the totality of the circumstances. *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002). The reasonable apprehension inquiry focuses on whether the declaratory plaintiff had a reasonable apprehension at the time the declaratory judgment claims were filed that it would face a lawsuit in the future. *West Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992). However, the "'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Super Sack*, 57 F.3d at 1058 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

In *Super Sack,* the court dismissed the defendant's counterclaims seeking declaratory relief in an infringement action where the plaintiff in the action promised it would not proceed on its infringement claims if the defendant withdrew its counterclaims and where the plaintiff promised it would not sue for infringement of the patents-in-suit for any products "previously or currently manufactured or sold" by the defendant. *Id*. at 1057-1060. The court reasoned that in light of the plaintiff's promise, there could be no reasonable apprehension of suit. *Id*. The court rejected the defendant's argument that there was a reasonable threat of suit because the covenant not to sue did not cover products that might be developed in the future. *Id*. at 1060. The court found such a theory too "speculative" to provide a basis for jurisdiction. *Id*.; *see also Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (holding that "an actual controversy cannot be based on a fear of litigation over future products").

### B. Implications of Settlement Agreement for Subject Matter Jurisdiction

#### 1. Piecemeal Settlement

Foxconn argues that the Settlement Agreement in FCI was a "piecemeal" settlement, resolving only the question of infringement and not the questions of validity and enforceability. Under such circumstances,

Foxconn asserts, the Court retains jurisdiction over its declaratory judgment claims. In support of this argument, Foxconn relies heavily on *Scosche Industries, Inc. v. Visor Gear Inc.,* 121 F.3d 675 (Fed. Cir. 1997). That case is not on point.

In *Scosche*, plaintiff Schosche Industries sought a declaratory judgment that a patent owned by Visor Gear was invalid and that Scosche's products did not infringe that patent. *Id*. at 676. Visor Gear, in turn, sued for infringement. *Id*. Scosche then made a Rule 68 offer of judgment with respect to the infringement allegations in the counterclaims. *Id*. Visor Gear accepted the offer and judgment was entered against Scosche on the infringement counterclaims. *Id*. Visor Gear then filed a summary judgment motion as to the remaining issues, including invalidity. *Id*. The trial court concluded that by accepting the Rule 68 offer, Scosche had admitted liability and therefore abandoned its invalidity defense. *Id*. The Federal Circuit, however, reversed the trial court on this issue, holding that under the express terms of the agreement between Scosche and Visor Gear, the offer of judgment resolved only the infringement counterclaims and did not reach the question of invalidity. *Id*. at 679. In reaching this conclusion, the Court applied principles of contract interpretation to determine the scope of the agreement, looking to the specific terms of the agreement. *Id*. The court apparently assumed that an actual controversy remained with respect to the invalidity claim after judgment had been entered as to the infringement counterclaims. However, this issue was not addressed in the Federal Circuit's opinion and presumably was not raised.

Foxconn insists that under the Settlement Agreement, the parties envisioned that its invalidity challenges to the FCI 1 patent would be litigated in this action and, therefore, as in *Scosche*, this issue was reserved. The Court rejects this argument for several reasons. First, the facts here are entirely different from those in *Scosche*. The Settlement Agreement on which Foxconn relies, by its own terms, resolved all disputes in FCI 1. Notably, it did not reserve Foxconn's right to seek review of the trial court's decision that its validity challenge was procedurally barred in that case. To the contrary, the Settlement Agreement states that is intended to "resolve completely the dispute" between FCI and Foxconn in that action. Mortazavi Decl., Ex. E (Settlement Agreement) at 2. On this basis, the Court dismissed FCI 1 with prejudice "in its entirety." *Id.*, Dismissal. Therefore, the Settlement Agreement was not part of a "piecemeal settlement" comparable to the one in *Scosche*.

Second, the Court finds no authority that suggests that *Scosche* should be extended to settlement

agreements that purport to reserve issues in separate actions. Even if the parties *did* agree in FCI 1 to preserve Foxconn's counterclaims in this action, such an agreement could not be enforced to the extent it attempts to create subject matter jurisdiction where there would otherwise be none. *See Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991) (holding that subject matter jurisdiction cannot be conferred upon courts by actions of parties and principles of estoppel and waiver do not apply).

Third, the Court disagrees with Foxconn's characterization of the Settlement Agreement as somehow *requiring* that the parties litigate the question of invalidity in this action. While the terms of the Settlement Agreement and the License Agreement clearly *permit* Foxconn to proceed with its invalidity claim in this action, nothing in those agreements prohibits FCI from withdrawing its infringement claims in this action and promising not to sue, even if such an action might destroy subject matter jurisdiction as to Foxconn's counterclaims.

### 2. Effect of License Agreement

Foxconn also argues that the fact that there is a License Agreement does not mean there is no reasonable apprehension of suit under the facts here. In essence, Foxconn appears to be arguing that there is an actual controversy with respect to the products licensed pursuant to the Settlement Agreement in FCI 1, notwithstanding the fact that Foxconn has continued to make royalty payments under the License Agreement. The Court disagrees.

In 1969, the Supreme Court in *Lear v. Adkins*, changed the prior law by holding that a licensee to a patent license agreement is not estopped from asserting that the patent is invalid. 395 U.S. 653 (1969). In a line of cases that followed, the Federal Circuit has addressed the implications of *Lear* as its holding relates to the requirement that there must be a reasonable apprehension of suit. In *C.R. Bard v. Schwartz*, the licensee had ceased making royalty payments but continued to sell the licensed product and the plaintiff had sued for breach of the royalty agreement to recover those royalty payments. 716 F.2d 874, 880-881 (Fed. Cir. 1983). The licensee then brought a declaratory judgment action seeking a declaration that the patent pursuant to which the license was issued was invalid. *Id.* at 874. The trial court held that the declaratory judgment action could not be brought because the license had not been terminated and therefore, there could be no reasonable apprehension of infringement. The Federal Circuit disagreed, holding that it was enough to create a reasonable apprehension that the licensee had stopped making

7

payments under the agreement while continuing to allow its sublicensee to manufacture the product at issue. The court explained its conclusion as follows:

> We reject the blanket approach . . . that there can never be an apprehension of a federal infringement suit and thus no controversy when a license is still in effect. To always require the termination of the license agreement as a precondition to suit would mean that a licensee must then bear the risk of liability of infringement. This would discourage licensees from contesting patent validity and would be contrary to the policies expressed in *Lear*. As stated in *Lear*, licensees are often the only ones with sufficient interest in a patent to contest its validity.

*Id*. at 874.

In *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004), the Federal Circuit addressed whether *Lear* and *C.R. Bard* meant that a licensee who not only had not terminated the agreement *but also* had not materially breached the agreement by stopping payment of licensing fees, might also have a reasonable apprehension of suit. The court held that it did not. *Id*. The court held that "a licensee must, at a minimum, stop paying royalties." *Id*. at 1381. The court rejected the licensee's argument that it was enough that it was paying royalties "under protest." *Id*. at 1381.

Foxconn has not ceased to make royalty payments under the License Agreement. *See* Declaration of M. Richard Page in Support of FCI's Motion to Dismiss Counts I and II of Defendants; Counterclaims for Lack of Subject Matter Jurisdiction ("Moore Decl.") at ¶¶ 3-4. As such, it is protected from litigation based on the FCI 1 licensed products by both the License Agreement and the Settlement Agreement. Under these circumstances, there is no reasonable apprehension of suit as to these products. Nor is the history of the litigation between FCI and Foxconn sufficient to create an actual controversy, given that all of litigation between these parties was initiated before the parties entered into the Settlement Agreement and License Agreement. *See id*. at 1381 (rejecting trial court's finding of an actual controversy based in part on history of litigation because the license "obliterated any reasonable apprehension of a lawsuit based on the prior circumstances").

### C. Foxray-S Enhanced Receptacle

Foxconn asserts that its Foxray-S Enhanced Receptacle, which is under development, gives rise to an actual controversy. Based on the evidence in the record, the Court concludes this device is not close enough to production to justify a finding of an actual controversy.

8

1  To establish an actual controversy, a declaratory judgment plaintiff must establish that it has
2  "actually produced or prepared to produce an allegedly infringing product." *Spectronics Corp. v. H.B.*
3  *Fuller Co., Inc.*, 940 F.2d 631, 634 (Fed. Cir. 1991); *see also Super Sack*, 57 F.3d at 1059 (finding no
4  actual controversy based, in part, on fact that declaratory judgment plaintiff had not taken "meaningful
5  preparatory steps toward an infringing activity"). Where a product has not yet been produced, courts look
6  to whether the facts at the time the claims were filed show "sufficient immediacy and reality to warrant the
7  issuance of a declaration judgment." *Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761, 766
8  (Fed. Cir. 1990) (citation omitted). In *Lang*, for example, the court held that the controversy was not
9  sufficiently immediate where the declaratory judgment plaintiff sought a declaration of infringement by a ship
10 hull that would not be completed for another nine months. *Id*. The Federal Circuit contrasted the facts to
11 those in *Automation Systems, Inc. v. Intel Corp.,* 501 F.Supp. 345, 348 (S.D. Iowa 1980), in which the
12 accused infringer had distributed sales literature, prepared to solicit orders and stated that samples of the
13 product would be available soon. *Id.*
14 Foxconn has provided virtually no evidence that it has taken "meaningful preparatory steps" toward
15 producing the Foxray-S Enhanced Receptacle. The only evidence it has provided is a single declaration
16 that states as follows:

> 7.  Foxconn has taken substantial steps toward developing an enhanced version of the Foxray connector called Foxray-S Enhanced Receptacle. Foxconn has developed a potential design for the product.

20 Declaration of Glen Moore in Support of Foxconn's Opposition to FCI's Motion to Dismiss Counts I and
21 II of Foxconn's Counterclaims ("Moore Decl."). Attached to the declaration is a drawing of the Foxray-S
22 Enhanced Receptacle. *Id.*, Ex. A. Notably absent is any evidence that a definite time line has been set for
23 production, or that Foxconn has advertised or solicited customers for the product. In short, nothing in the
24 record suggests the sort of immediacy with respect to the Foxray-S Enhanced Receptacle that courts have
25 found give rise to an actual controversy.

### D.  The DDR Connector

27 Foxconn also asserts that there is an actual controversy with respect to its DDR Connector. The
28 Court rejects Foxconn's position.

9

According to Foxconn, it submitted a design for its DDR Connector to Apple in the summer of 2002 and has been selling it to Apple since September 2003. Declaration of Hung-Chi Yu in Support of Foxconn's Opposition to FCI's Motion to Dismiss Counts I and II of Foxconn's Counterclaims ("Yu Decl."), ¶ 3. However, in response to FCI's interrogatory asking Foxconn to identify all of the 2-piece BGA connectors it "manufactured, used, offered for sale, sold or imported," the DRR connector was not listed. Nor did Foxconn update its interrogatory responses to include the DDR Connector. Rather, the DDR Connector was revealed only after FCI brought its Motion to Dismiss, on March 30, 2005. Declaration of Neel Chatterjee in Support of Defendants' Brief in Opposition to FCI's Motion to Dismiss Counts I and II of Defendants' Counterclaims for Lack of Subject Matter Jurisdiction to the Extent They Related to U.S. Patent Numbers 6,024,584, 6,079,991, 6,093,035, 6,164,983 and 6,325,644 ("Chaterjee Decl."), Ex. C (March 30, 2005 Letter).

The Court finds no evidence in the record that FCI has taken any actions that constitute a threat sufficient to create a reasonable apprehension of suit with respect to the DDR Connector. First, the Court has no reason to doubt that Foxconn's interrogatory responses were truthful and that it's failure to supplement those response was in good faith. Accordingly, the Court concludes that the DDR Connector is not a 2-piece BGA connector. In fact, at oral argument, Foxconn stipulated that the DDR Connector is a *one-piece* connector known as an "edgecard." Thus, the current lawsuit does not challenge the technology used in the DDR Connector and would not support a finding of reasonable apprehension even if FCI were to proceed with it. Second, there is no evidence in the record that FCI has ever made any threats of suit with respect to this product.[5] Therefore, the Court declines to find an actual controversy

---

[5] At oral argument, FCI offered evidence it asserted shows a reasonable apprehension of suit with respect to the DDR Connector. In particular, it pointed to two interrogatory responses in FCI 1 indicating that the DDR Connector might have been at issue in that action. In the first response, FCI identified as a possible infringing product "certain edgecard connectors utilizing BGA technology." *See* Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories to Plaintiff FCI USA, Inc., Response to Interrogatory No. 1. In a supplemental response to the same interrogatory, FCI added "a two-piece BGA socket for Apple." *See* Plaintiffs' Additional Responses and Objections to Defendants' Fifth Set of Interrogatories to Plaintiff FCI USA, Inc. The Court rejects Foxconn's argument. First, because the evidence was presented for the first time at oral argument and Foxconn offered no explanation for failing to present the evidence during briefing on the Motion, the Court declines to consider it. Second, even if the Court were to consider this evidence, it would not find it sufficient to demonstrate a reasonable apprehension of suit. Neither of these responses specifically identifies the DRR connector. Indeed, the supplemental response clearly does *not* refer to the DDR Connector, as it refers to a "two-piece" socket and the parties have stipulated the DDR Connector is a one-piece connector. This leaves only a vague reference to "certain edgecard connectors using BGA

1 based on the DDR Connector.

### E. Scope of Covenant and Release

Foxconn asserts that the covenant not to sue offered by FCI should include not only the Foxray connector but also the Enhanced Foxray-S and the DDR Connector and should extend to Foxconn's customers. FCI has agreed to extend the covenant to FCI's customers but argues that the covenant need not be extended to the Enhanced Foxray-S and the DDR Connector because there is no actual controversy as to those products. The Court agrees for the reasons stated above.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED on the following condition: that, within ten (10) days, Plaintiffs deliver the proffered covenant not to sue to Defendants, with a copy to be filed with the Court. Upon such filing, Counts I and II of Defendants' counterclaims shall be dismissed without prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Dated: May 11, 2005

/s/ Joseph C. Spero
JOSEPH C. SPERO
United States Magistrate Judge

---

technology." This single reference in a lawsuit that has settled, without any evidence of specific threats to sue based on the DDR Connector, is insufficient to create a reasonable apprehension of suit.

United States District Court
For the Northern District of California